# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 136

Liquid Hospitality, LLC d/b/a Windbreak Saloon,  Appellee

v.

Board of City Commissioners of the City of Fargo,

a North Dakota municipal corporation,  Appellant

### No. 20240347

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Cherie L. Clark, Judge.

REVERSED.

Opinion of the Court by Jensen, Chief Justice, in which Justices Crothers, McEvers, Tufte, and Bahr joined. Justice Tufte filed a concurring opinion, in which Chief Justice Jensen joined.

Timothy O'Keeffe (argued) and Madison Marchus (appeared), Fargo, ND, for appellee.

Howard D. Swanson (argued) and Yusuf Abas (on brief), Grand Forks, ND, for appellant.

**Jensen, Chief Justice.**

[¶1]  The Board of City Commissioners of the City of Fargo appeals from a district court judgment reversing its decision to uphold the City of Fargo Liquor Control Board's determination that the Windbreak Saloon violated Fargo Municipal Code ("F.M.C.") § 25-1509.2 in serving an overly intoxicated person. The Commission argues it did not act arbitrarily, capriciously, and unreasonably when it determined that the Windbreak served alcoholic beverages to an intoxicated or impaired person in violation of F.M.C. § 25-1509.2; the Windbreak lacks standing to raise a void for vagueness challenge; and F.M.C. § 25-1509.2 prohibiting service of alcoholic beverages to an intoxicated or impaired person is constitutional. We reverse.

I

[¶2]  Liquid Hospitality, LLC d/b/a Windbreak Saloon holds a liquor license from the City of Fargo. As a licensee, the Windbreak is subject to F.M.C. § 25-1509.2 which places restrictions on obviously intoxicated or impaired persons. Section 25-1509.2 states:

> No licensee, partner, principal, agent, or employee of any licensee shall sell, serve, or furnish alcoholic beverages to, or allow possession or consumption of alcoholic beverages on the licensed premises, by any person who is or has become *intoxicated or impaired* by alcohol or drugs. A person may be considered to be *obviously intoxicated or impaired* when it can be determined by appearance, conduct, or demeanor. The term *"obviously intoxicated or impaired"* shall mean that the person's obvious intoxication or impairment be reasonably discernible or evident to a person of ordinary experience. Such indicators of *intoxication or impairment* may include, but are not limited to, a combination of any of the following types of conditions:
>
> > A. Problems with, or inability to maintain, balance, i.e., stumbling, swaying, staggering gait, bumping into furniture while walking, falling against bar or off stool, resting head on bar;

B. Ineffective muscular coordination, i.e., spilling and/or knocking over drinks, unable to pick up change;

C. Delayed responses, rambling, disorientation, and mental confusion;

D. Strong smell of alcohol;

E. Unusual or distorted speech, i.e., slurred, thick tongue, uncontrollable voice pitch, muttering;

F. Bloodshot, watery, or glassy eyes, flushed face;

G. Condition of clothes and hair, i.e., soiled clothing, urinated upon clothing, disheveled;

H. Unusual behavior, i.e., vomiting, profanity, crying, hiccups, fighting, loud, boisterous, obnoxious behavior, sleeping or unconscious;

I. Anxious, scratching, paranoia, dry mouth, or dilated pupils.

Violation of this ordinance may result in sanctions as prescribed in Section 25-1512(F). Violations may be established with direct and indirect evidence.

(Emphasis added.)

[¶3] On August 18, 2023, Windbreak staff members removed an intoxicated patron from the premises who subsequently drove away from the location and was involved in a single vehicle accident. The patron had a blood alcohol concentration of 0.291 and was arrested for driving under the influence. The Fargo Police Department ("the Department") began investigating the Windbreak regarding the serving of alcohol to the patron.

[¶4] As part of its investigation, the Department reviewed surveillance maintained by the Windbreak. The investigating officer's report provided details of Windbreak's service of alcoholic beverages to the patron. The report included a description of the patron's behavior throughout the evening which included the patron arriving at the Windbreak at 10:47 p.m. without appearing intoxicated; at around 12:12 a.m., approximately five drinks later, the patron was observed dancing in an exaggerated and slower manner followed by resting her head on the stage; at 12:37 a.m., the patron took a shot and sips of another drink; at 12:54 a.m., the patron appeared to pass out at a table which draws attention

2

from Windbreak staff and they bring her a glass of water; at 12:58 a.m., the patron needs assistance walking and is escorted out of the building by Windbreak staff.

[¶5] The Windbreak was served a notice of a hearing before the Liquor Control Board to consider the possible violation of F.M.C. § 25-1509.2. The notice included the following:

> [T]he City Auditor's office has determined Windbreak Saloon has violated liquor license requirements as defined in section 25-1509.2 of the Fargo Municipal Code, including overserving an *obviously intoxicated* patron. During the hours from approximately 10:45 pm to 1:00 am [in] August 2023, drinks were provided [to] a patron who was overly intoxicated.

(Emphasis added.)

[¶6] On October 24, 2023, the Liquor Control Board held a hearing to consider whether a liquor violation occurred. The Fargo Police Chief and investigating officer presented the factual basis to the Liquor Control Board and recommended finding a violation had occurred. The investigating officer described in detail the behaviors exhibited by the patron and captured on the video which led him to conclude that a liquor violation had occurred. The Liquor Control Board determined that the Windbreak violated F.M.C. § 25-1509.2 and recommended the assessment of an administrative penalty in the amount of $500.00. The Windbreak appealed the decision to the Commission.

[¶7] The Fargo Police Chief presented the same evidence to the Commission that had been provided to the Liquor Control Board. The Commission voted unanimously to uphold the decision of the Liquor Control Board. In its written findings, the Commission concluded the Windbreak provided alcohol to a person who had become "*overly intoxicated*" in violation of F.M.C. § 25-1509.2 (emphasis added). The Windbreak appealed to the district court.

[¶8] Following a hearing, the district court sua sponte requested additional briefing from the parties regarding the constitutionality of F.M.C. § 25-1509.2. In the order for additional briefing, the court noted:

3

> The title of F.M.C. § 25-1509.2 indicates its scope relates to restrictions "on obviously intoxicated or impaired persons" and the body of the ordinance provides a definition of "obviously intoxicated or impaired." However, the ordinance appears to prohibit any sale or service to, or possession or consumption by, "intoxicated or impaired" persons. There is no definition of "intoxicated or impaired" within the ordinance. The definitions within the article—F.M.C. § 25-1501(2)—state "[a]ll alcohol[ic] beverages shall be deemed intoxicating."

[¶9]   After briefing, the district court entered its order reversing the findings and order of the Commission. The court found "there are concerns with the Ordinance proscribing certain conduct that differs from the remainder of the Ordinance, the issue turns to whether the Ordinance passes constitutional muster, specifically void-for-vagueness analysis." Following the court's void for vagueness analysis, the court held that the ordinance is unconstitutionally vague and reversed the Commission's order. The court did not decide whether the Commission acted arbitrarily, capriciously, or unreasonably, or that their decision was lacking substantial evidence. The Commission appealed to this Court.

II

[¶10] The district court concluded that F.M.C. § 25-1509.2 is unconstitutionally vague because it fails to provide adequate warning of when conduct is prohibited. We review de novo a claimed violation of a constitutional right. *City of Belfield v. Kilkenny*, 2007 ND 44, ¶ 8, 729 N.W.2d 120. An ordinance is presumed to be constitutional. *Id.* "Generally, the rules of construction applicable to state statutes apply in the construction of municipal ordinances." *Mini Mart, Inc. v. City of Minot*, 347 N.W.2d 131, 141 (N.D. 1984). We construe statutes to avoid constitutional infirmities. *Leet v. City of Minot*, 2006 ND 191, ¶ 13, 721 N.W.2d 398. "Any doubt must be resolved in favor of the constitutionality of the statute." *State v. Tweed*, 491 N.W.2d 412, 418 (N.D. 1992) (quoting *N.D. Council of Sch. Adm'rs v. Sinner*, 458 N.W.2d 280, 285 (N.D. 1990)).

[¶11] Under the North Dakota Constitution, no person shall be deprived of life, liberty, or property without due process of law. N.D. Const. art. I, § 12. Vague

4

laws are unconstitutional because they do not give fair warning and allow for discriminatory enforcement. *City of Fargo v. Roehrich*, 2021 ND 145, ¶ 6, 963 N.W.2d 248.

> Vague laws may trap the innocent because they fail to provide adequate warning of what conduct is prohibited, and they may result in arbitrary and discriminatory application because a vague law delegates basic policy matters to those who apply the law, allowing the law to be applied on an ad hoc and subjective basis.

*State v. Holbach*, 2009 ND 37, ¶ 24, 763 N.W.2d 761.

[¶12] To survive a void for vagueness challenge, laws require a degree of specificity:

> A law is not unconstitutionally vague if: (1) the law creates minimum guidelines for the reasonable police officer, judge, or jury charged with enforcing the law, and (2) the law provides a reasonable person with adequate and fair warning of the prohibited conduct. A law is not unconstitutionally vague if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law.

*State v. Moses*, 2022 ND 208, ¶ 17, 982 N.W.2d 321 (cleaned up).

[¶13] The district court concluded and the Windbreak contends it is unclear as to whether the ordinance applies to individuals who are intoxicated or only to individuals who are obviously intoxicated. The Commission argues the ordinance clearly sets out guidelines and provides fair notice of prohibited conduct to reasonable persons and that the terms "intoxicated" or "impaired" are widely understood, commonly used, and have been long established in the law, offering a standard that any reasonable person can comprehend. The Commission contends that a reasonable person would conclude that a patron behaving in a manner such as dancing alone with exaggerated motions, resting her head on the stage, touching another patron, passing out at a table, and needing assistance to walk was intoxicated or impaired and should not continue to be served alcohol.

5

[¶14] We note that because the ordinance does not include criminal penalties and no party asserts that it implicates a constitutional right requiring stricter vagueness analysis, a less stringent standard for evaluating the vagueness doctrine should have been applied. In *City of Belfield v. Kilkenny*, we noted:

> "[T]he more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender* [*v. Lawson*]*,* 461 U.S. [352,] 358, 103 S.Ct. 1855 [(1983)] (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)). *"For obvious reasons, the standard of certainty required in criminal statutes is more exacting than in noncriminal statutes.* This is simply because it would be unthinkable to convict a man for violating a law he could not understand." *Barenblatt v. United States,* 360 U.S. 109, 137, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959).

2007 ND 44, ¶ 11, 729 N.W.2d 120 (emphasis added). The United States Supreme Court reiterated its test for facial challenges in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, stating:

> The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):
>
> > "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

455 U.S. 489, 498-99 (1982) (footnotes omitted).

[¶15] As a licensee, the Windbreak is subject to F.M.C. § 25-1509.2 which places restrictions on obviously intoxicated or impaired persons. Violation of this ordinance may result in sanctions as prescribed in F.M.C. § 25-1512(F). The penalties listed under section 25-1512(F) include the following:

Administrative penalties for violation of section 25-1509.2 are as follows:

1. First offense: $500 administrative penalty.

2. Second offense: $1,000 administrative penalty, plus a one-day suspension of alcoholic beverage license to be determined by liquor control board. For Class "AB", "A" and "B" license holders, one day suspension of license (liquor sales only) with the date selected by

licensee. Such suspension shall be within thirty (30) days of either the occurrence of the offense or final decision upon appeal.

3. Third offense: $2,000 administrative penalty, plus a two-day day suspension of alcoholic beverage license to be determined by liquor control board. For Class "AB", "A" and "B" license holders, two days in one week suspension of liquor license (liquor sales only) on consecutive dates chosen by licensee requiring the business to be closed. Such suspension shall be within thirty (30) days of either the occurrence of the offense or final decision upon appeal.

4. Fourth offense: Revocation.

Any suspension of alcoholic beverage license provided for herein shall relate to liquor sales only so that food sales could, if applicable, continue on the licensed premises.

The level of offense shall be determined by reference to an 18-month period from the first offense by licensee. A second offense occurring more than 18-months after a first offense would be deemed a first offense.

It is the intent of this ordinance that no multiple offenses shall be deemed to have occurred from a single incident. For example, on an officer contact with the licensed premises, if there should be two or more offenses involving intoxicated persons on the premises, the same will constitute one offense and not multiple offenses. Any subsequent officer contact with the establishment at a different time may constitute a separate offense.

[¶16] Because the ordinance does not impose criminal penalties and no party has claimed it implicates a constitutional right that requires stricter vagueness analysis, we consider it as an economic regulation subject to a less strict vagueness test. The Windbreak is in the business of serving alcohol and must comply with the ordinances that apply to it as a licensee. Using the words of the ordinance itself, it is clear on the face of this ordinance that the Windbreak as a licensee shall not serve, or furnish alcoholic beverages to, or allow possession or consumption of alcoholic beverages on the licensed premises, by any person who is or has become *intoxicated or impaired* by alcohol or drugs. Whether a person is

intoxicated or impaired by alcohol or drugs is something a reasonable person can determine. It is even more clear that the Windbreak should not serve a person who may be considered to be *obviously intoxicated or impaired* when it can be determined by appearance, conduct, or demeanor, because the criteria for obvious intoxication is clearly set forth in the ordinance. The ordinance is not vague on its face. We conclude that F.M.C. § 25-1509.2 is not void for vagueness and the district court erred in finding F.M.C. § 25-1509.2 to be unconstitutionally vague. We note the challenge we have been asked to review was a facial challenge to the ordinance and the question of whether violation of the ordinance was clearly articulated in the charging documents, a potential "as applied" challenge, is not before us.

III

[¶17] The Commission argues its decision that the Windbreak violated the provisions of F.M.C. § 25-1509.2 by serving alcohol to an intoxicated or impaired patron is not arbitrary, capricious, or unreasonable.

[¶18] "In an appeal from the decision of a local governing body under N.D.C.C. § 28-34-01, our scope of review is the same as the district court's and is very limited." *Graber v. Logan County Water Res. Bd.*, 1999 ND 168, ¶ 7, 598 N.W.2d 846. Our function is to independently determine the propriety of the decision, without according any special deference to the court's decision, and unless the local governing body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. *Id.* "A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation." *Klindt v. Pembina Cnty. Water Res. Bd.*, 2005 ND 106, ¶ 12, 697 N.W.2d 339 (quoting *Douville v. Pembina Cnty. Water Res. Dist.*, 2000 ND 124, ¶ 5, 612 N.W.2d 270).

[¶19] The Commission applied the "obviously intoxicated" standard which is a higher standard than mere intoxication when it determined the Windbreak violated F.M.C. § 25-1509.2. We have reviewed the evidence presented before the

Commission and conclude that there is substantial evidence to support a finding that on August 18, 2023, the Windbreak conducted its business in a manner which resulted in violation of F.M.C. § 25-1509.2. Upon our review of the record, we conclude the Commission finding that the Windbreak violated the provisions of F.M.C. § 25-1509.2 is not arbitrary, capricious, or unreasonable, and is supported by substantial evidence.

IV

[¶20] We conclude the district court erred in finding F.M.C. § 25-1509.2 to be unconstitutionally vague and the Commission finding that the Windbreak violated the provisions of F.M.C. § 25-1509.2 is not arbitrary, capricious, or unreasonable, and is supported by substantial evidence. The judgment of the district court is reversed.

[¶21]  Jon J. Jensen, C.J.
            Daniel J. Crothers
            Lisa Fair McEvers
            Jerod E. Tufte
            Douglas A. Bahr

**Tufte, Justice, concurring.**

[¶22] I join the majority opinion. I write separately to point out that the district court's decision to raise a constitutional question is the root of the problem.

[¶23] On appeal from the City's decision, the district court raised the issue of whether the ordinance "is subject to any constitutional concerns, including, but not limited [to], void for vagueness." The court directed the parties to submit briefing on this question.

[¶24] A situation may arise where a statute or ordinance is so clearly constitutionally suspect that the court should sua sponte raise a constitutional issue and request briefing, but even when it appears the adversarial system has failed to identify such a question, the court should be reluctant to enter the fray. *See United States v. Sineneng-Smith*, 590 U.S. 371, 378–79 (2020) (reversing court of

10

appeals where "[n]o extraordinary circumstances justified the panel's takeover of the appeal"). Even assuming a serious risk that a person will be found in violation of an unconstitutionally vague ordinance, the court need not raise a question of facial invalidity when it can address the concern as applied to that person in those circumstances. *See City of Fargo v. Windmill, Inc.*, 350 N.W.2d 32, 36 (N.D. 1984). A declaration that an ordinance is facially void for vagueness grants relief no party requested. Such a declaration bars enforcement of the unconstitutionally vague ordinance against anyone, whether or not the ordinance may be vague under the circumstances presented in another case. At most, the district court properly could have inquired whether the ordinance was vague as to the facts before it. But the court should not have raised even that question where, as here, both parties are represented by competent counsel who may have reasons for limiting their arguments. *See City of Fargo v. State*, 2024 ND 236, ¶ 12, 14 N.W.3d 902.

[¶25] Jon J. Jensen, C.J.
Jerod E. Tufte